# United States Court of Appeals for the Federal Circuit

---

**CROCS, INC.,**
*Plaintiff-Appellee*

**v.**

**EFFERVESCENT, INC., HOLEY SOLES HOLDINGS, LTD.,**
*Defendants*

**DOUBLE DIAMOND DISTRIBUTION, LTD., U.S.A. DAWGS, INC., MOJAVE DESERT HOLDINGS, LLC,**
*Defendants-Appellants*

---

2022-2160

---

Appeal from the United States District Court for the District of Colorado in No. 1:06-cv-00605-PAB-MDB, Judge Philip A. Brimmer.

---

Decided:  October 3, 2024

---

MICHAEL BERTA, Arnold & Porter Kaye Scholer LLP, San Francisco, CA, argued for plaintiff-appellee.  Also represented by SEAN MICHAEL CALLAGY, ISAAC RAMSEY; ANDREW TUTT, Washington, DC.

MATT BERKOWITZ, Reichman Jorgensen Lehman &

Feldberg LLP, Redwood Shores, CA, argued for defendants-appellants. Also represented by NAVID CYRUS BAYAR.

_____

Before REYNA, CUNNINGHAM, *Circuit Judges*, and ALBRIGHT, *District Judge*[1].

REYNA, *Circuit Judge*.

Appellants Double Diamond Distribution, Ltd.; U.S.A. Dawgs, Inc.; and Mojave Desert Holdings, LLC (collectively, "Dawgs") appeal from a decision of the United States District Court for the District of Colorado granting summary judgment in favor of Appellee Crocs, Inc. ("Crocs").

Crocs sued Dawgs for patent infringement. Dawgs counterclaimed, alleging that Crocs was liable for damages for false advertising in violation of Section 43(a) of the Lanham Act. Crocs moved for summary judgment on grounds that Dawgs' counterclaim failed as a matter of law. Crocs argued that the circumstances in this case do not give rise to a Section 43(a) cause of action. The district court agreed and entered summary judgment in Crocs' favor. We hold that a cause of action arises from Section 43(a)(1)(B) where a party falsely claims that it possesses a patent on a product feature and advertises that product feature in a manner that causes consumers to be misled about the nature, characteristics, or qualities of its product. We reverse and remand.

## BACKGROUND

The pertinent history of this appeal begins in 2006 when Crocs sued Double Diamond Distribution, Ltd. and several other competitor shoe distributors for patent

_____

[1]    Honorable Alan D Albright, District Judge, United States District Court for the Western District of Texas, sitting by designation.

infringement.[2] *See* Crocs' Complaint for Patent Infringement, *Crocs, Inc. v. Effervescent, Inc.*, No. 06-cv-00605-PAB-KMT (D. Colo. Apr. 3, 2006), ECF No. 1; *see also In the Matter of Certain Foam Footwear*, 71 Fed. Reg. 27514-01 (May 11, 2006).

In May 2016, Dawgs filed a counterclaim against Crocs alleging false advertising violations of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a). In March 2017, Dawgs filed its operative pleading in the case, its Second Amended Answer and Counterclaims ("SACC"). *See* J.A. 469–580. The counterclaim alleges Dawgs was damaged by Crocs' false advertisements and commercial misrepresentations. *See, e.g.*, J.A. 576, ¶ 345. Dawgs alleges that Crocs had

---

[2]     This appeal rises from a group of cases spanning multiple forums that have a long and complex history of litigation involving Crocs and its competitors. The district court case against Double Diamond Distribution, Ltd. was stayed for almost five years pending a contemporaneously-filed Section 337 action before the International Trade Commission, which proceeded to an appeal before this court and a remand. *See Crocs, Inc. v. Int'l Trade Comm'n*, 598 F.3d 1294 (Fed. Cir. 2010). U.S.A. Dawgs was added as a defendant in the district court litigation after it resumed in 2012. The district court case was stayed again from 2012 to 2016 pending inter partes review proceedings. It was also stayed from 2018 to 2020 while U.S.A. Dawgs was engaged in bankruptcy proceedings, during which time Mojave Desert Holdings, LLC became involved in the litigation. Between these two stays, in 2016, Dawgs sued eighteen current and former Crocs officers and directors, alleging the same counterclaims against them as Crocs. The district court consolidated the cases and the individual defendants were later dismissed from the action. The facts and circumstances of the consolidated case are not at issue in this appeal.

engaged in a "campaign to mislead its customers" about the characteristics of the primary material Crocs uses to make its footwear products, a material it promoted as "Croslite." J.A. 495, ¶ 51; J.A. 481, ¶ 7. According to Dawgs, Crocs' website falsely described Croslite as "patented," "proprietary," and "exclusive" (collectively, "patented"). J.A. 575, ¶ 342; *see also* J.A. 603 (Ex. 21 to SACC); J.A. 608 (Ex. 23 to SACC). Dawgs alleges that by promoting Croslite as "patented," Crocs misled current and potential customers to believe that "Crocs' molded footwear is made of a material that is different than any other footwear." J.A. 575, ¶ 342. Dawgs alleges that Crocs' statements deceived consumers into believing that its competitors' molded footwear products are "made of inferior material compared to Crocs' molded footwear." J.A. 576, ¶ 345.

During discovery, Crocs moved for summary judgment on grounds that Dawgs' counterclaim was "legally barred" by the Supreme Court's decision in *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23 (2003), and this court's decision in *Baden Sports, Inc. v. Molten USA, Inc.*, 556 F.3d 1300 (Fed. Cir. 2009). J.A. 1398–99; *see generally* J.A. 1393–99.

The district court agreed with Crocs and granted summary judgement in its favor. *Crocs, Inc. v. Effervescent, Inc.*, No. 06-cv-00605-PAB-KMT, 2021 WL 4170997, at \*9 (D. Colo. Sept. 14, 2021) ("*Decision*"). The district court decided that in view of *Dastar* and *Baden,* Dawgs failed as a matter of law to state a cause of action under Section 43(a) of the Lanham Act. *Id.* at \*7. The district court concluded that the terms "patented," "proprietary," and "exclusive" were claims of "inventorship." *Id.* at \*6; *see also* J.A. 1977. Applying *Dastar* and *Baden* to the SACC, the district court determined that Dawgs' claims of inventorship were directed to a claim of false designation of authorship of the shoe products and not the nature, characteristics, or qualities of Crocs' products. *Decision*, 2021 WL 4170997, at \*7; *see also* J.A. 1969 (quoting 15 U.S.C. § 1125 (a)(1)(B)).

Dawgs moved for reconsideration, which the district court denied. J.A. 1966; J.A. 1981. Dawgs appeals. We have jurisdiction under 28 U.S.C. § 1295(a)(1).

### STANDARD OF REVIEW

We review appeals involving interpretation of the Lanham Act *de novo*, applying the law of the regional circuit in which the relevant district court sits, in this case the Tenth Circuit. *Baden*, 556 F.3d at 1304; *Strauss v. Angie's List, Inc.*, 951 F.3d 1263, 1267 (10th Cir. 2020). Since the Tenth Circuit has not spoken on the legal issue, we must "predict how that regional circuit would have decided the issue in light of the decisions of that circuit's various district courts, public policy, etc." *Panduit Corp. v. All States Plastic Mfg. Co.*, 744 F.2d 1564, 1575 (Fed. Cir. 1984).

Similarly, we review appeals of summary judgment under the law of the regional circuit. *Baden*, 556 F.3d at 1304. The Tenth Circuit reviews a district court's grant of summary judgment *de novo*, applying the same legal standard as the district court. *Faustin v. City & Cnty. of Denver, Colo.*, 423 F.3d 1192, 1195 (10th Cir. 2005); *Hull v. IRS*, 656 F.3d 1174, 1177 (10th Cir. 2011). In determining whether to grant a motion for summary judgment, the district court considers whether the moving party is entitled to judgment as a matter of law. *Faustin*, 423 F.3d at 1198.

### DISCUSSION

Dawgs raises a single issue on appeal: whether the district court erred in granting summary judgment against Dawgs' counterclaim for failure to state a cause of action under Section 43(a)(1)(B) of the Lanham Act. Appellant Br. 6. We first address the Lanham Act.

The Lanham Act was enacted to "protect persons engaged in . . . commerce against unfair competition." 15 U.S.C. § 1127. Section 43(a)(1) of the Lanham Act establishes a federal cause of action for unfair competition. *Dastar*, 539 U.S. at 29.

Section 43(a)(1) of the Lanham Act states,

Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—

(A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or

(B) *in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,*

shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a)(1) (emphasis added).

The district court found no genuine issue of material fact in dispute supporting a cause of action under Section 43(a)(1)(A). *Decision*, 2021 WL 4170997, at \*4. Dawgs does not appeal this ruling. Instead, Dawgs only challenges the district court's decision on whether its counterclaim allegations sufficiently raise a cause of action under Section 43(a)(1)(B) of the Lanham Act.[3] We therefore do not separately address Section 43(a)(1)(A).

---

[3]    Various courts have taken the approach that "nature, characteristics, [or] qualities" in Section 43(a)(1)(B)

In addition, as a threshold matter, the key question of whether Crocs' representation that Croslite is patented is in fact false is not in dispute. Section 43(a)(1)(B) creates a cause of action for a person damaged by *false or misleading* commercial advertising or promotions that mislead consumers about the nature, characteristics, or qualities of goods or services. *See* 15 U.S.C. § 1125(a)(1)(B). Crocs conceded in its briefing, and at oral argument before this court, that its statements that Croslite was covered by a patent are false. *See* Appellee Br. 70–71; Oral Arg. Tr. 16:22–16:33. Stated differently, Crocs admits that it was never granted a patent for Croslite. Oral Arg. Tr. 16:22–16:33.

Dawgs' appeal focuses on Section 43(a)(1)(B). Dawgs argues that when commercial misrepresentations that a product is "patented," "proprietary," and "exclusive" are linked to the nature, characteristics, or qualities of the product, those misrepresentations are actionable under Section 43(a)(1)(B) of the Lanham Act. *See, e.g.*, Appellant Br. 23.

Dawgs asserts that the district court's conclusion that *Dastar* and *Baden* are dispositive in this case is erroneous.

---

relate to "the characteristics of the good itself," not intangibles involving the source of ideas embodied in a product, like product authorship. *Baden*, 556 F.3d at 1307 (quoting *Sybersound Recs., Inc. v. UAV Corp.*, 517 F.3d 1137, 1144 (9th Cir. 2008)); *see also Kehoe Component Sales Inc. v. Best Lighting Prod., Inc.*, 796 F.3d 576, 590 (6th Cir. 2015). At least one circuit court has suggested in passing that there is an "open . . . possibility that some false authorship claims could be vindicated under the auspices of § 43(a)(1)(B)'s prohibition on false advertising." *Zyla v. Wadsworth, Div. of Thomson Corp.*, 360 F.3d 243, 252 n.8 (1st Cir. 2004); *see also Baden*, 556 F.3d at 1308 n.1.

Appellant Br. 36; *see Decision*, 2021 WL 4170997, at \*6–7. First, Dawgs argues that those cases were based on circumstances different from the circumstances in this appeal. Appellant Br. 28–33, 36. Second, Dawgs argues that its counterclaims adequately allege that Crocs used the terms "patented," "proprietary," and "exclusive" in its advertisements in a manner that misled consumers about the nature, characteristics, or qualities of its own products and the products of its competitors. *Id.* at 46–51. As such, Dawgs argues that it has sufficiently alleged a cause of action under Section 43(a)(1)(B) and therefore the district court should not have granted summary judgment. *Id.* at 6.

### *Dastar* and *Baden*

The district court concluded that based on binding precedent established in *Dastar* and *Baden*, Crocs' false claims to have "patented" Croslite are not actionable under Section 43(a)(1)(B). *Decision*, 2021 WL 4170997, at \*6. The district court likened falsely claiming to have "patented" something as similar "to plagiarizing or reverse passing off, which *Dastar* held not . . . covered by the Lanham Act's false advertising prohibition." *Id.* (footnote omitted). The district court similarly concluded that this court in *Baden* found non-actionable "terms that the court likened to claims of inventorship" and that in this case, "[f]alsely claiming to have 'patented' something is akin to claiming to have 'invented' it." *Id.* The district court determined that Dawgs' counterclaim could not stand because any claim that a product was patented was directed to inventorship, and thus the counterclaim was precluded by *Dastar* and *Baden*. *Id.* We disagree.

In *Dastar*, the Supreme Court considered the scope of unfair competition that is actionable under Section 43(a)(1)(A) of the Lanham Act, which relates to misrepresentations about the "origin, sponsorship, or approval" of goods or services. *Dastar*, 539 U.S. at 31.

*Dastar* involved a World War II television series first broadcast in 1949. *Id.* at 26. Although the copyright on the television series expired in the 1970s, the respondents acquired exclusive rights to distribute the series on video in the late 1980s. *Id.* In 1995, petitioner Dastar purchased tapes of the original 1949 series, copied them, and edited them with minor changes. *Id.* at 26–27. It then sold the video set as its own product, with no reference to the original series. *Id.* at 27. Respondents brought an action against Dastar under Section 43(a)(1)(A) of the Lanham Act for false designation of origin. *Id.* at 27, 31.

The Court found that "origin" in Section 43(a)(1)(A) of the Lanham Act means "the producer of the tangible goods that are offered for sale, and not . . . the author of any idea, concept, or communication embodied in those goods." *Id.* at 37. The Court concluded that this section of the Lanham Act was not intended to protect originality or creativity, and that "[t]o hold otherwise would be akin to finding that § 43(a) created a species of perpetual patent and copyright, which Congress may not do." *Id.* Because Dastar was the originator of the products it sold, the Court found the Lanham Act claim failed. *Id.* at 38. The Court concluded that parties in respondents' shoes might still have other forms of relief for conduct like Dastar's. *Id.* If, for example, a party substantially copied a series but suggested in advertising that the work was "quite different" from the earlier series, they might be entitled to relief under Section 43(a)(1)(B). *Id.* The Court observed that a Lanham Act cause of action does not arise for merely claiming that a party is the producer of the video. *Id.*

In *Baden*, this court considered the effect of *Dastar* in a Section 43(a)(1)(B) action brought in the Ninth Circuit. *Baden*, 556 F.3d at 1304–08. In a suit between two competing basketball manufacturers, Baden argued that its competitor Molten's advertising violated the Lanham Act. *Id.* at 1302. Molten promoted its basketballs as having a "dual-cushion technology" that its advertisements

10                          CROCS, INC. v. EFFERVESCENT, INC.

described as "innovative." *Id.* at 1302–03. Baden argued that by advertising its basketballs as "innovative," Molten deceived consumers into believing that it was the originator of the dual-cushion technology. *Id.* at 1303. At trial, the jury issued a verdict in favor of Baden. *Id.* at 1304. We reversed.

We explained that in the Ninth Circuit, a claim based on false designation of authorship is not actionable under Section 43(a)(1)(A) or Section 43(a)(1)(B). *Id.* at 1307. Baden had argued that Molten's advertisements were false "precisely because Molten was not the source of the innovation," *i.e.*, not the author. *Id.* We held that "authorship, like licensing status, is not a nature, characteristic, or quality, as those terms are used in Section 43(a)(1)(B) of the Lanham Act." *Id.*; *see Sybersound*, 517 F.3d at 1144. Because Baden based its false advertising claims on allegations that Molten was improperly asserting itself as the innovator, *i.e.*, the author, of the technology, Baden had no claim under Section 43(a)(1)(B). *Id.*

Although *Dastar* and *Baden* are based on different circumstances, the analysis used by the Supreme Court and this court in those cases is informative in this appeal. *Dastar* cautions that a false claim of origin, and nothing more, is a claim of authorship and does not give rise to a cause of action under Section 43(a)(1)(A) or (B). But, here, the false claim that a product is patented does not stand alone. Dawgs presents allegations and evidence that the falsity of Crocs' promotional statements is rooted in the nature, characteristics, or qualities of Crocs' products.

Both the district court and Crocs quote *Baden* to suggest that permitting a Section 43(a)(1)(B) claim based on linking "patented" with a product characteristic would contravene *Dastar* by allowing reframing of a claim that is based on false attribution of authorship. *Baden*, 556 F.3d at 1307; *see Decision*, 2021 WL 4170997, at *7; Appellee Br. 59. We disagree. A claim that a product is constructed

of "patented" material is not solely an expression of innovation and, hence, authorship.  Again, *Baden* did not involve false advertisements linking such claims to a product's tangible nature, characteristics, or qualities.  In this case, for example, Dawgs submitted webpage printouts that purported to show promotional statements by Crocs that a patent covers Croslite.  *See, e.g.*, J.A. 603 (Ex. 21 to SACC), J.A. 608 (Ex. 23 to SACC).  Those promotional materials further included statements that Croslite has numerous tangible benefits found in all of Crocs' shoe products.  J.A. 603 (Ex. 21 to SACC), J.A. 608 (Ex. 23 to SACC).

Dawgs argues it has stated a cause of action because the falsehood that Croslite is patented was used by Crocs to ascribe characteristics that go to the nature and qualities of Croslite.  Dawgs alleges that "Crocs' statements referring to the closed-cell resin that [it] call[s] 'Croslite' as 'exclusive,' 'proprietary,' and/or 'patented'" causes customers to believe that "Crocs' molded footwear is made of a material that is different than any other footwear."  J.A. 575, ¶ 342.  Dawgs further alleges that Crocs' promotional materials "deceive consumers and potential consumers into believing that all other molded footwear . . . is made of inferior material compared to Crocs' molded footwear."  J.A. 576, ¶ 345.

We agree with Dawgs that these allegations about Crocs' advertisement statements are directed to the nature, characteristics, or qualities of Crocs' shoes.  We hold that a cause of action arises from Section 43(a)(1)(B) where a party falsely claims that it possesses a patent on a product feature and advertises that product feature in a manner that causes consumers to be misled about the nature, characteristics, or qualities of its product.

CONCLUSION

We have considered Crocs' remaining arguments and find them unpersuasive.  Because Dawgs timely presented

a theory under Section 43(a)(1)(B) of the Lanham Act linking Crocs' alleged misrepresentations in commercial advertisements to the nature, characteristics, or qualities of Crocs' shoes, the district court erred in granting summary judgment on Dawgs' Lanham Act counterclaim. We accordingly reverse and remand for further proceedings.

## REVERSED AND REMANDED

Costs

Costs against Crocs.