**BADEN SPORTS, INC., Plaintiff,**

v.

**Kabushiki Kaisha MOLTEN (DBA Molten Corporation) and Molten U.S.A., Inc., Defendants.**

**No. C06–210MJP.**

United States District Court, W.D. Washington, at Seattle.

Jan. 28, 2008.

Bruce A. Kaser, Vantage Law, Issaquah, WA, James L. Phillips, Aubrey Anne Seffernick, Miller Nash LLP, Seattle, WA, for Plaintiff.

Aaron Wainscoat, Arthur S Beeman, Margaret Elizabeth Day, Nickolas Bohl, Robert Buergi, Stellman Keehnel, DLA Piper U.S. LLP, East Palo Alto, CA, Gi–In An, Edwards Angell Palmer & Dodge LLP, Washington, DC, for Defendants.

MARSHA J. PECHMAN, District Judge.

This matter comes before the Court on Defendants' motion for judgment as a matter of law (Dkt. No. 359) and motion for a new trial (Dkt. No. 358). Plaintiff opposes both motions. (Dkt. Nos. 372 & 373.) Having considered the motions and responses, Defendants' replies (Dkt. Nos. 375 & 374), all documents submitted in support thereof and the record herein, and having heard oral argument on the motions, the Court DENIES both motions.

### Background

Defendants Kabushiki Kaisha Molten and Molten U.S.A. (hereinafter "Molten") and Plaintiff Baden Sports are competitors in the sports ball business. In the 1990's, Baden developed and patented a new game-quality basketball that is "cushioned" or "padded." (Third Amended Complaint [hereinafter Compl.] ¶ 10.) Believing that Molten had started selling "dual cushion technology" basketballs in the United States that infringed on Baden's patent, Baden sued Molten for patent infringement. Baden also sued Molten

for violations of the Lanham Act, 15 U.S.C. § 1125, alleging that Molten falsely advertised its infringing basketball as an "innovative technology that is proprietary to Molten" and imported its balls into the United States without marking the country of origin. (Compl.¶ 46). As the litigation progressed, Molten changed the design of its "dual cushion technology" basketball that it sold in the United States.

This case was tried before a jury between August 6 and August 14, 2007. Before trial began, the Court granted summary judgment in favor of Defendants on Plaintiff's country of origin claim and granted summary judgment in favor of Plaintiff on Plaintiff's claim that Defendants' "old" basketballs infringed its '835 patent. (Dkt. Nos. 233 & 236.) The Court also limited Baden's Lanham Act claim by ruling that Baden could only bring such a claim on Molten's advertising that its basketballs were "innovative" and not on Molten's advertising that its basketballs were "exclusive" or "proprietary." (Dkt. No. 233.)

The Court made several important discovery rulings before and during trial that affected Molten's ability to present its defense. Before trial, the Court granted Baden's motion to exclude all Molten Corporation witnesses, including Hidesuki Kiriki, who had planned to testify regarding the construction of the "new" Molten basketball and Molten's JP '253 patent, on which the "new" design is based. (Dkt. No. 235.) The Court excluded Mr. Kiriki and all other Molten Corp. witnesses because Molten inexcusably delayed disclosing its intention to call Mr. Kiriki until after discovery had closed and because Molten's counsel had informed Baden that no Molten Corp. witnesses would testify at trial. (Id.) The Court also excluded Craig Barker, who had planned to testify regarding the obviousness of Baden's '835 patent, because Molten did not identify Mr. Bark-

er as a witness until three months after the close of discovery. (Dkt. No. 283; Tr. 698–702.) During trial, the Court granted Baden's motion to exclude English translations of Molten's Japanese prior art patents because Molten did not disclose, until after trial had already commenced, the translator of those documents and because Molten did not offer a witness to lay the foundation for the accuracy of the translations. (Tr. 985–88.) Molten therefore had no evidence to present to the jury on the issue of invalidity and the Court directed a verdict in favor of Plaintiff on Defendants' claim that Plaintiff's patent was invalid. (Tr. 993.) Molten's dilatoriness in identifying witnesses and preparing for trial thus resulted in key witnesses and evidence being excluded, and a directed verdict on the issue of invalidity in favor of Baden.

Several questions were presented to the jury: (1) whether Baden had proved that Molten had falsely advertised its product as "innovative"; (2) whether any such false advertising was intentional; (3) whether Baden had proved that Molten had continued to offer for sale in the United States its infringing basketball; and (4) whether Molten's patent infringement was willful. (Dkt. No. 313.) The jury was also asked to decide what amount to award as damages for the Lanham Act violation and/or a reasonable royalty for the Patent Act violation. (Id.) On August 16, the jury rendered a verdict in favor of Plaintiff on all claims, concluding that Molten had intentionally falsely advertised, continued to offer for sale infringing basketballs, and willfully infringed Baden's '835 patent. The jury awarded Baden $38,031.00 as a reasonable royalty for patent infringement and $8,054,579.00 as damages for Molten's intentional false advertising. (Dkt. No. 321.)

After trial, the Court granted in part Baden's motion for a final judgment and permanent injunction. The Court enjoined Molten from false advertising within the United States and false advertising directed at United States consumers. (Dkt. No. 348.) The Court granted Baden's motion for prejudgment interest, but denied Baden's motion for enhanced patent damages and attorneys' fees. (*Id.*)

After trial, Molten retained new counsel and terminated all but one of its trial attorneys. With its new counsel, Molten now moves for judgment as a matter of law and for a new trial.

### Discussion

### I. Motion for Judgment as a Matter of Law

Molten moves for judgment as a matter of law ("JMOL") under Federal Rule 50(b). The parties dispute whether Molten properly preserved all of the issues it raises in its motion and whether the jury's verdict is supported by substantial evidence.

### A. Preservation of Issues for Federal Rule 50(b) Motion

 Federal Rule 50 provides in relevant part:

(a) **Judgment as a Matter of Law**

(1) In General. If a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue, the court may:

(A) resolve the issue against the party; and

(B) grant a motion for judgment as a matter of law against the party on a claim or defense that, under the controlling law, can be maintained or defeated only with a favorable finding on that issue.

(2) Motion. A motion for judgment as a matter of law may be made at any time before the case is submitted to the jury. The motion must specify the judgment sought and the law and facts that entitle the movant to the judgment.

(b) **Renewing the Motion After Trial; Alternative Motion for a New Trial.** If the court does not grant a motion for judgment as a matter of law made under Rule 50(a), the court is considered to have submitted the action to the jury subject to the court's later deciding the legal questions raised by the motion. No later than 10 days after the entry of judgment—or if the motion addresses a jury issue not decided by a verdict, no later than 10 days after the jury was discharged— the movant may file a renewed motion for judgment as a matter of law and may include an alternative or joint request for a new trial under Rule 59. In ruling on the renewed motion, the court may:

(1) allow judgment on the verdict, if the jury returned a verdict;

(2) order a new trial; or

(3) direct the entry of judgment as a matter of law.

Fed.R.Civ.P. 50(a), (b).[1] Rule 50 therefore prescribes a two-step process for preserving challenges to the sufficiency of the evidence supporting a verdict: first, a party must file a pre-verdict motion under Rule 50(a) (also known as a "directed verdict" motion); second, the party must file a post-verdict motion for judgment as a matter of law. *See Nitco Holding Corp. v.*

---

1. The Court refers to the Federal Rules of Civil Procedure as amended in 2007. The 2007 amendments to the language of Rule 50, effective Dec. 1, 2007, are intended to by stylistic only. Fed.R.Civ.P. 50 advisory committee's note 2007 Amendments.

*Boujikian,* 491 F.3d 1086, 1089 (9th Cir. 2007). "Rule 50(b) restricts the grounds that may be asserted in post-verdict motions to those asserted in pre-verdict motions." *See* 9 James Wm. Moore, *Moore's Federal Practice–Civil* § 50.05[5][b][i] (2007). Thus, a Rule 50(a) motion is a prerequisite to a Rule 50(b) motion; to move for judgment as a matter of law on a particular issue, the movant must have previously raised that specific issue in the pre-verdict motion. *Id.; see also Gilchrist v. Jim Slemons Imports, Inc.,* 803 F.2d 1488, 1493 (9th Cir.1986).

The chronology of the parties' Rule 50(a) motions is as follows:

(1) After Plaintiff's opening statement, Molten moved "under Rule 50 based on the opening statement." (Tr. 192.) Molten argued that Baden's false advertising claim—that Molten falsely advertised that its basketball was "innovative"—was really a "reverse passing off" claim relating to the inventorship of Molten's "dual cushion technology," a claim barred under the Court's summary judgment order and the Supreme Court's decision in *Dastar Corp. v. Twentieth Century Fox Film Corp.,* 539 U.S. 23, 123 S.Ct. 2041, 156 L.Ed.2d 18 (2003). (*Id.*) The Court denied the motion, stating that it is "rare" that this kind of motion should be granted, and that as long as the facts presented in the opening statement could support Plaintiff's claim, the motion should be denied. (Tr. 198.)

(2) After the parties presented all their evidence, the Court invited motions for directed verdict. (Tr. 990.) Baden moved on two issues—whether Baden's patent was invalid and whether Molten continued to offer to sell infringing dual cushion technology basketballs even after it changed its basketball design.

(3) Before the Court could rule on Baden's motion, Molten made the following motion:

We would like to move for directed verdict on that *same issue* as well [sic] on different grounds, which is lack of proof or any evidence of any damage resulting from the alleged offers to sell that came after the sales of the actual product were halted.

(Tr. 993.) By "same issue," Molten meant the *same issue* that Baden had just raised, i.e. whether Baden had proved that Molten violated the Patent Act by continuing to "offer to sell" infringing basketballs. The Court granted Baden's motion on the invalidity claim, denied Baden's motion on the offer to sell issue, and then invited Molten to make its motion again. Molten's counsel responded:

In light of Your Honor's ruling on the second part, the offer to sell part of their motion, I will not pursue the *other motion.*

(Tr. 995.) Thus, Molten withdrew its motion on the lack of proof of damage resulting from the alleged offers to sell. Molten made no other directed verdict motions.

■ Based on its review of the transcript and applicable case law, the Court concludes that Molten preserved two issues for a Rule 50(b) motion: (1) whether Baden's false advertising claim under the Lanham Act can proceed under the Supreme Court's decision in *Dastar;* and (2) whether Baden offered sufficient evidence to prove that Molten continued to offer its infringing basketballs for sale even after it changed to a non-infringing design. Baden argues that Molten waived the first issue by raising it at the close of opening arguments rather than waiting until Baden presented its evidence. (Baden does not challenge that Molten preserved the second issue.) In *McSherry v. City of Long Beach,* 423 F.3d 1015 (9th Cir.2005), the Ninth Circuit held that a district court erred when it granted a Rule 50 motion before trial started. But in a footnote, the

court explicitly stated that its holding does not encompass a judgment as a matter of law granted after opening statements. *Id.* at 1021 n. 3. And the opinion indicates that a district court could treat a motion made at the close of opening statements as a proper Rule 50(a) motion because "the allegations of the pleadings, the evidence before the court, and the promises of evidence recited in [the] opening statement can be insufficient as a matter of law to warrant any relief...." *Id.* (internal quotation marks omitted); *see also* 9 *Moore's Federal Practice—Civil* § 50.20[2][b] ("Judgment as a matter of law may be granting following an opponent's opening statement if that opening statement embraces all operative facts expected to be proven at trial and those facts are insufficient to sustain a claim for relief under any legal theory."). Acknowledging a Rule 50(a) motion made at the close of opening statements makes sense in light of the purpose of the two-tiered Rule 50 motion process: the earlier motion puts the non-movant on notice that the movant believes the non-movant's evidence is insufficient to support its claim. *See McSherry*, 423 F.3d at 1020 (noting that one of the major purposes of Rule 50(a) is to give the non-moving party notice of and an opportunity to cure any deficiency in that party's proof); *see also Summers v. Delta Air Lines, Inc.*, 508 F.3d 923, 930 (9th Cir.2007). The Court concludes that Molten's motion, made at the close of opening statements, was sufficient to put Baden on notice of deficiencies in its proof and properly preserved the *Dastar* issue for consideration in a Rule 50(b) motion.

Molten, however, seeks to challenge more than just the false advertising and offer to sell issues. Molten seeks judgment as a matter of law on additional issues, arguing as follows:

1) Molten's advertisement of dual cushion technology basketballs as "inno-vative" constitutes non-actionable puffery as a matter of law;

2) The evidence does not support a finding that Molten's description of dual cushion technology basketballs as innovative actually deceived consumers, was material or caused Baden injury;

3) The jury's damages award, in excess of $8 million, is not supported by the evidence and is erroneous as a matter of law; and

4) The jury's verdict that Molten's infringement was "willful" is not supported by the evidence and is erroneous as a matter of law.

▉ These issues are *not properly con-sidered* under Rule 50(b) because Molten did not preserve them in any Rule 50(a) motion. *See Gilchrist*, 803 F.2d at 1493. Molten argues that even if it waived these issues under Rule 50(a), the Court may review the sufficiency of the evidence and grant judgment as a matter of law where there is plain error apparent on the face of the record such that the failure to review the sufficiency of the evidence would result in a manifest miscarriage of justice. But Molten has failed to cite any legal authority suggesting that a *district court* may conduct this "plain error" review. Molten cites to a 1987 Ninth Circuit case in which the Ninth Circuit stated that it could review the sufficiency of evidence despite a failure to move for a directed verdict at the close of evidence where there is plain error apparent on the face of the record. *Herrington v. County of Sonoma*, 834 F.2d 1488, 1500 n. 11 (9th Cir.1987). *Herring-ton* was recently overruled in *Nitco*, 491 F.3d at 1090. In *Nitco*, the Ninth Circuit ruled that a recent Supreme Court opinion—*Unitherm Food Systems, Inc. v. Swift–Eckrich, Inc.*, 546 U.S. 394, 126 S.Ct. 980, 163 L.Ed.2d 974 (2006)—precludes plain error appellate review when a party fails to file a proper Rule 50(b) mo-

tion. The Court overruled its prior decisions that had suggested otherwise: "To the extent that our prior decisions permitted a discretionary plain error review, we must overrule those decisions as in conflict with controlling Supreme Court authority." *Nitco,* 491 F.3d at 1090. Thus, *Nitco* overrules *Herrington* and makes clear that appellate courts may not conduct plain error review where a party procedurally defaults a civil appeal by not following the Rule 50 process. Molten has not cited and the Court is not aware of any authority for the proposition that, despite *Nitco* and *Unitherm,* the district court may conduct plain error review where a party has failed to preserve an issue for its Rule 50(b) motion. The Court declines to conduct any plain error review of those issues that Molten failed to preserve for a Rule 50(b) motion through a Rule 50(a) motion.[2]

Molten also suggests that the Court may review its puffery argument now because, even though Molten did not explicitly raise the issue during trial, "the Court may consider Molten's objection as such." (Def's Reply on JMOL Mot. at 3.) The Ninth Circuit has said that where "an ambiguous or inartful request or motion is made at the close of evidence which sufficiently approximates a motion for a directed verdict," the Court may construe that request as a Rule 50(a) motion. *See Herrington,* 834 F.2d at 1500. But Molten does not even suggest which "inartful" request should be construed as a directed verdict motion regarding puffery. And the transcript reveals that no such Rule 50(a) motion was ever made. See infra (discussion regarding motions made on record). Molten did not preserve the puffery issue for its Rule 50(b) motion.

The Court notes that Molten missed earlier opportunities during this litigation to raise the puffery issue. Molten first ar-

gued that its use of the word "innovative" was mere puffery (and therefore not actionable under the Lanham Act) in its reply brief to its motion to dismiss, filed in October 2006. (*See* Dkt. No. 57.) The Court rejected the argument specifically because Molten had raised it for the first time in a reply brief. (*See* Dkt. No. 115, Order at 8.) Because Baden had not had a chance to respond, the Court stated that it would "not consider at this stage whether Molten's assertions that it has developed an 'innovative' and 'proprietary' design is mere puffery." (*Id.*) Molten subsequently filed several other dispositive motions, but never raised the puffery issue in those motions. The only other time Molten raised the issue of puffery was in connection with the proposed preliminary jury instructions. But as Molten admits in it briefing, whether a statement that Molten's "dual cushion technology" basketballs are "innovative" is mere puffery "is a question that can and should be determined by the Court as a matter of law." (Defs' Mot. for JMOL at 3.) The Court rejected Molten's jury instruction on puffery for precisely that reason—because the question is not a fact question to be decided by the jury. Because Molten failed to properly raise this legal issue, it is now waived.

In conclusion, the Court concludes that Molten preserved only two issues for consideration in its Rule 50(b) motion: (1) whether Baden's false advertising claim under the Lanham Act can proceed under the Supreme Court's decision in *Dastar*; and (2) whether Baden offered sufficient evidence to prove that Molten continued to offer its infringing basketballs for sale even after it changed to a non-infringing design.

---

**2.** Even if the Court were to conduct such a review, the Court would conclude that there

is no plain error on the face of the record warranting judgment as a matter of law.

## B. Substantive Standard for Federal Rule 50(b) Motion

The parties do not dispute the standard for evaluating a motion for judgment as a matter of law: a motion for judgment as a matter of law may be granted only if there is an absence of substantial evidence to support the verdict. *Wallace v. City of San Diego*, 479 F.3d 616, 624 (9th Cir.2007). "Substantial evidence is evidence adequate to support the jury's conclusion, even if it is also possible to draw a contrary conclusion from the same evidence." *Id.* (quoting *Johnson v. Paradise Valley Unified Sch. Dist.*, 251 F.3d 1222, 1227 (9th Cir.2001)). "In making this determination, the court must not weigh the evidence, but should simply ask whether the plaintiff has presented sufficient evidence to support the jury's conclusion." *Id.* Although the court must review the entire evidentiary record, it should disregard all evidence favorable to the moving party that the jury is not required to believe. *Id.* The court must view all the evidence in the light most favorable to the non-moving party, and draw all reasonable inferences in favor of that party. *Id.* "Judgment as a matter of law may be granted only where, so viewed, the evidence permits only one reasonable conclusion, and that conclusion is contrary to the jury's verdict." *Id.*

## C. *Dastar* Issue

Molten argues that Baden's false advertising claim as presented to the jury should be vacated because the claim is barred by the Supreme Court's decision in *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 123 S.Ct. 2041, 156 L.Ed.2d 18 (2003). *Dastar* held that a false advertising claim under § 43 of the Lanham Act cannot be based on inventorship or ownership of a product. *Dastar*, 539 U.S. at 37, 123 S.Ct. 2041. In its order granting in part and denying in part Molten's motion for summary judgment on Baden's Lanham Act claims, the Court concluded that *Dastar* does not bar Plaintiff's false advertising claim based on Molten's advertising that its product or technology is "innovative" because "whether something is 'innovative' does not turn on who owns or offers a product." (Dkt. No. 233, Order at 8.) "[A]ny advertising indicating that Molten's 'Dual Cushion Technology' is 'innovative' or new relates, not to the inventor of Molten's basketball technology, but to the 'nature, characteristics, [or] qualities' of the basketballs themselves." (*Id.*) Molten argues that despite the Court's ruling, Baden presented evidence at trial that confirms that its Lanham Act claim is merely an inventorship claim, i.e., a claim that Molten falsely advertised its dual cushion technology as its own, rather than Baden's, invention.

The Court instructed the jury regarding Baden's Lanham Act claim in a series of instructions. In its "Unfair Competition" instruction, the Court explained that "Baden Sports claims Molten Corp. and Molten USA advertised their 'dual cushion' basketballs as a Molten innovation and they were not." (Dkt. No. 312, Final Jury Instruction No. 15.) The Court also instructed that to prevail on their false advertising claim, Baden must prove that "in advertisements, defendants made false statements of fact about their own product...." (*Id.*, Final Jury Instruction No. 16.)

Several witnesses testified that Molten falsely advertised its "dual cushion technology" as a Molten innovation. Although some of that testimony indicates that the witnesses believed that Molten's advertising was false because *Baden* actually created the patented design, not Molten, (see Schindler testimony, Tr. 228:24) other testimony makes clear that the witnesses believed the advertising to be false because Molten's product was not "new."

(*See* Schindler testimony, Tr. 229:4–7; Holm testimony, Tr. 317:15–16; Yalch testimony, Tr. 349: 17–22, 470:1–6.) The fact that witnesses used Baden's prior design as evidence to show that Molten's product was not innovative or new does not mean that Baden was actually basing its false advertising claim on an allegation that "Molten didn't make it, we did." The Court concludes that Baden's false advertising claim, as presented to the jury, does not run afoul of *Dastar.*

### D. Offer for Sale

■ Molten also argues that Baden did not offer sufficient evidence to prove that Molten continued to offer its infringing basketballs for sale even after it changed to a non-infringing design. Although Molten contended that it changed its basketball design (in the United States) in June 2006 and stopped selling basketballs in the United States with the infringing "dual cushion technology" in January 2007, Baden alleged that Molten continued to offer these infringing balls for sale in the United States after January 2007. (Dkt. No. 312, Final Jury Instructions No. 24.) The Court instructed the jury that in order to find that either defendant infringed Baden's patent by making an offer to sell a ball with "dual cushion technology," the jury must find that Baden proved:

(1) that the defendant made an offer which showed a willingness to enter into a bargain, so that the buyer would understand that his agreement to the bargain is invited and will conclude it;

(2) that the offer contemplates a sale to be concluded in the United States.

---

**3.** Molten USA CEO Kiyoaki Nishihara testified that basketballs were actually sold through the Molten USA website. (Tr. 624:13–14.)

**4.** Because the Court concludes that the evidence of offers to sell made through the Mol-

(*Id.*) Baden presented evidence showing (and Molten admits in its briefing) that Molten USA's website contained advertisements for "dual cushion technology" basketballs after January 2007. (Tr. 623:22–624:14, 669–72; Defs' Mot. for JMOL at 10.) Consumers could order those basketballs directly from the Molten USA website.[3] This evidence is sufficient to support the jury's conclusion that Molten continued to offer for sale infringing "dual cushion technology" basketballs after January 2007.[4]

### II. Motion for New Trial

■■ Molten moves for a new trial under Federal Rule 59(a). Federal Rule 59(a) provides:

> The court may, on motion, grant a new trial on all or some of the issues—and to any party—as follows:
>
> (A) after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court. . . .

Fed.R.Civ.P. 59(a). "Since specific grounds for a motion to amend or alter are not listed in the rule, the district court enjoys considerable discretion in granting or denying the motion." *Jorgensen v. Cassiday,* 320 F.3d 906, 918 (9th Cir.2003). A motion for a new trial will be granted where the jury instructions are erroneous or inadequate, the court made incorrect and prejudicial evidentiary rulings, the verdict is against the great weight of the evidence, or the damages are excessive. 11 Wright, Miller, Kane, *Federal Practice & Procedure* § 2805 (2d ed.1995). Baden incorrectly argues that Molten cannot

ten USA website is sufficient to support the jury's verdict on this issue, the Court need not consider the parties' dispute regarding whether advertising on Molten *Corp.'s* website constituted an offer to sell or whether Molten induced third parties to make such offers.

raise any "sufficiency of the evidence" issues that it did not preserve through a Rule 50(a) motion. The Ninth Circuit recently stated that "a motion for a new trial does not have to be preceded by a Rule 50(a) motion prior to submission of the case to the jury." *Freund v. Nycomed Amersham*, 347 F.3d 752, 765 (9th Cir. 2003) (holding that motion for new trial on grounds of insufficiency of evidence of malice did not need to be preceded by a Rule 50(a)-type motion at the close of the evidence); *see also* 9B Wright & Miller, *Federal Practice & Procedure* § 2531 (3d ed. 2008) ("The failure to seek a judgment as a matter of law at the close of all the evidence does not procedurally bar a motion for a new trial, but it does bar a renewed motion for judgment as a matter of law.").[5] Thus, Molten has not waived any of the arguments presented in its Rule 59 motion by not raising them in a Rule 50(a) motion.

Molten makes the following arguments as grounds for a new trial:

1) The jury's verdict on Baden's false advertising claim is contrary to the clear weight of the evidence, and was a result of legal error as the jury was not properly instructed on all necessary legal issues;

2) The jury's damage award for the Lanham Act is contrary to the clear weight of the evidence, resulted from legal error, and is grossly excessive;

3) The jury's verdict that Molten Corp. and Molten U.S.A. continued to offer for sale infringing basketballs in the United States is contrary to the clear weight of the evidence;

4) The jury's verdict that Molten's infringement of the '835 patent was willful is contrary to the clear weight of the

evidence, and was the result of legal error in light of *In Re Seagate;*

5) The jury's damages award for the Patent Act claim is excessive due to the absence of marking and is contrary to the clear weight of the evidence.

Molten seeks a new trial on all of these issues, or alternatively, remittitur on the damages awards.

### A. Lanham Act claim

Molten argues that the jury's verdict and damages award on Baden's Lanham Act claim is contrary to the clear weight of the evidence, based on errors of law, and excessive.

### 1. The Court's Lanham Act Jury Instructions Were Appropriate

The Court instructed the jury that to prevail on its false advertising cause of action, Plaintiff needed to prove each of the following elements:

(1) in advertisements, defendants made false statements of fact about their own product;

(2) those advertisements actually deceived or have the tendency to deceive a substantial segment of their audience;

(3) such deception is material, in that it is likely to influence the purchasing decision;

(4) defendants caused the falsely advertised goods to enter United States interstate commerce; and

(5) plaintiff has been or is likely to be injured as the result of the foregoing either by direct diversion of sales from itself to defendants or by less-

---

**5.** The Court acknowledges that some of the Ninth Circuit's case law suggests that a motion for new trial challenging the sufficiency of the evidence does need to be preceded by a Rule 50(a) motion. *See e.g., Zhang v. Am.*

*Gem Seafoods, Inc.,* 339 F.3d 1020 (9th Cir. 2003). The Court is bound to follow *Freund* because it is the most recent and most directly applicable holding on the subject.

ening of the goodwill which its products enjoy with the buying public. (Dkt. No. 312, Final Jury Instruction No. 16.)

 First, Molten argues that the Court's false advertising instruction was erroneous because it omitted an instruction that puffery cannot support a Lanham Act violation. This issue has not been preserved. Molten objected to the Court's decision not to give a puffery instruction when it took its exceptions to the *preliminary* set of jury instructions. (Tr. 24:10–18.) But as the Court instructed the jury, it is the *final* set of jury instructions that controls. (Dkt. No. 312, Final Jury Instructions No. 1.) Molten did not object to the omission of a puffery instruction in the final set of instructions. (Tr. 1002–1005.) Indeed, Molten itself recognized that it needed to make any such objection during the final instruction process—Molten's counsel stated, after taking exception to the omission of a puffery instruction in the preliminary set: "We think that this is probably a matter, though, that we should reserve for the final instructions." (Tr. 24:16–18.) By not taking exception to the final set of instructions on this issue, Molten waived the issue. And even if Molten had properly preserved the issue for consideration on a motion for new trial, the Court did not err by not giving the puffery instruction Molten had proposed. That instruction asked the jury to decide whether Defendants' use of the word "innovative" was mere puffery. (Dkt No. 284, Defs' Proposed Jury Instruction No. 42.) As explained above, whether a statement is puffery is a question of law, not a fact question for the jury.

Second, Molten argues that the Court erred by not giving an instruction that

explained that evidence of patent infringement is not evidence of false advertising. But the jury instructions made clear that the patent and false advertising claims were separate and distinct issues. The Court instructed the jury regarding this issue as follows:

> You are instructed that in this case, Baden's claims for patent infringement and for unfair competition are separate and independent. This means that the issue of whether Molten infringed Baden's patent is a separate and different issue than the issue of whether it falsely advertised its "dual cushion" basketballs as innovative.

(Dkt. No. 312, Final Jury Inst. No. 20.) Moreover, as the Court explained in an exchange with counsel over this issue, both the verdict form and the instruction on the elements of the false advertising claim also reinforced that whether Molten falsely advertised is a separate and distinct issue from whether it infringed Baden's patent. The Court did not err by not giving a redundant instruction on this issue.

## 2. The Jury's Verdict is Not Contrary to the Clear Weight of the Evidence

Molten argues that Baden did not prove that 1) Molten's advertising deceived consumers, 2) Molten's advertising influenced consumer purchases, or 3) Molten's advertising caused injury.[6]

 In terms of the deception element, Baden needed to prove that Defendants' false advertising actually deceived or has the tendency to deceive a substantial segment of their audience. *Rice v. Fox Broad. Co.*, 330 F.3d 1170, 1180 (9th Cir. 2003). Baden CEO Michael Schindler tes-

---

6. The Court notes that Molten did not take exception to the Court's final instruction regarding the elements of a false advertising claim. (*See* Tr. 1002–05.) To the extent that Molten's current argument involves rehashing the elements of a false advertising claim, its argument is waived.

tified that Molten's advertising that dual-cushion technology is a Molten innovation would "absolutely" deceive a substantial part of Baden's consumers. (Tr. 233–34.) Molten points to no testimony contradicting Mr. Schindler's testimony.

Baden also proved that this deception was material, in that it was likely to influence consumers' purchasing decisions. *See Rice*, 330 F.3d at 1180. Richard Yalch, professor of marketing at the University of Washington School of Business, testified that Molten's description of its "dual cushion technology" as an innovative new feature providing various benefits. would be important to consumers choosing among basketballs and would likely influence consumers' purchasing decisions. (Tr. 365–67.) The Court overruled Molten's objections that this testimony was speculative. (Tr. 366–67.) Mr. Schindler also testified that, based on his assessment of the influence of Baden's own advertising, he believed that Molten's advertising that "dual cushion technology" is a Molten innovation would influence Baden's customers to purchase Molten basketballs. (Tr. 234:9–17.) Molten argues that this testimony was speculative and that the record is devoid of direct evidence of consumer deception, but Molten has pointed to no evidence or testimony in the record that contradicts the testimony of these two witnesses. The clear weight of the evidence in the record favors Baden on the issue of materiality.

Finally, Baden offered evidence showing that Baden "has been or is likely to be injured as the result of the foregoing either by direct diversion of sales from itself to defendant, or by lessening of the goodwill which its products enjoy with the buying public." *See Rice*, 330 F.3d at 1180; *see also Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1146 (9th Cir. 1997) (calling into question statement in earlier Ninth Circuit opinion that actual evidence of injury resulting from deception was necessary and holding that showing of actual consumer confusion was unnecessary because defendant's intentionally false advertising entitled plaintiff to a presumption of causation). Mr. Schindler and Baden senior sales manager Matthew Holm testified that Molten's false advertising caused Baden's goodwill to be damaged. (Tr. 235–36, 316–17.) Although Molten argues that no specific or quantifiable examples of harm or consumer confusion in the marketplace was provided for the jury to consider, such evidence is not necessary, and Molten has pointed to no evidence or testimony in the record contradicting Messrs. Schindler and Holm's testimony.

Thus, the clear weight of the evidence—indeed, the only evidence pointed to by the parties—supports the jury's verdict on the false advertising claim.

### 3. Damages Award

Molten argues that the jury's $8 million damages award is grossly excessive and against the clear weight of the evidence. The Court instructed the jury that if Plaintiff proved the elements of its false advertising claim, including that such advertising was intentional, Plaintiff was entitled to the profits Molten earned as a result of the false advertising. (Dkt. No. 312, Final Jury Inst. No. 17.) The Court also instructed the jury that it was Defendants' burden to prove what portion of its profits were attributable to factors other than the use of false advertising. (*Id.*) Professor Yalch testified that Molten's profits from the false advertising could be measured by the amount Molten paid for its recent sponsorship agreements with FIBA and USA Basketball. (Tr. 371–72.) Pursuant to these sponsorship agreements, FIBA advertised and promoted Molten's "innovative" "dual-cushion technology." (*See* Tr.

359–62, 368.) Professor Yalch also testified that Molten's sales in the United States were flat until 2004, but then took off after Molten changed the exterior design of the ball and FIBA began promoting the ball. (Tr. 470.) Professor Yalch testified that the amount Molten paid for these agreements was a good estimate of the value of the agreements and therefore the value of the advertising provided by the agreements. (Tr. 368–72.) Professor Yalch testified that Molten paid $3.5 million for one FIBA sponsorship agreement, $18 million for another, and $100,000 for the USA Basketball agreement. (Tr. 371.) Scott Hampton, a certified public accountant whose area of expertise is in valuation of intellectual property, calculated the net present value of the FIBA agreements to be $2,114,091 (for the December 2002 agreement) and $5,940,488 (for the December 2006 agreement). (Tr. 503.) The sum of those two figures is the amount awarded by the jury for Lanham Act damages— $8,054,579. Mr. Hampton also calculated Molten's profits on sales of basketballs in the United States from 2002 through January 1, 2007, to be $65,990. (*Id.*)

 Molten presents several arguments regarding why the $8 million figure does not accurately reflect damages sustained by Baden as a result of Molten's intentional false advertising. But Molten was able to make these argument to the jury, and to present evidence showing that Baden's damages were, in fact, much less. The Ninth Circuit has stated that the amount a defendant spends on advertising may provide a good estimate of the financial benefit it obtains from that advertising. *U–Haul Int'l, Inc. v. Jartran, Inc.*, 793 F.2d 1034, 1042 (9th Cir.1986). Molten has pointed to no evidence in the record contradicting Professor Yalch's testimony or proving that the damages amount should actually be much less. The Court acknowledges that Krista Holt, Defendants' damages expert, testified that she believed Professor Yalch's calculation of Lanham Act damages to be inaccurate. (Tr. 881–84, 886.) She also testified that because the FIBA agreements cover advertising and sponsorship for hundreds of countries, only a small percentage of the $8 million paid to FIBA could approximate United States profits. (Tr. 888–89.) Ms. Holt estimated false advertising damages to be around $37,000. (Tr. 902–03.) But Ms. Holt's testimony alone does override or undermine the testimony of Professor Yalch and Scott Hampton. The jury's verdict on Lanham Act damages is not against the clear weight of the evidence.

## B. Patent Claim

Molten argues that the Court should grant a new trial on Baden's Patent Act claim because (1) the jury's verdict that Molten continued to offer to sell "dual cushion technology" basketballs in the United States is against the clear weight of the evidence, (2) the jury's verdict that Molten's infringement was "willful" is against the weight of the evidence and based on an erroneous statement of the law, (3) and the jury's damages award is excessive and against the clear weight of the evidence.

### 1. Molten Continued to Offer for Sale Infringing Basketballs

For the same reasons stated above in respect to Molten's motion for judgment as a matter of law, the Court will not grant a new trial on the issue of whether Molten continued to offer for sale infringing basketballs. Baden's evidence showing that Molten USA's website contained advertisements for "dual cushion technology" basketballs after January 2007 and that consumers could order those basketballs directly from the Molten USA website is sufficient to support the jury's conclusion that Molten continued to offer for

sale infringing "dual cushion technology" basketballs after January 2007.

## 2. Willfulness

Molten argues that the jury's finding of willful infringement is against the clear weight of the evidence and based on an error of law.[7] This issue is moot. "Willfulness" is a factor that the Court considers in determining whether enhanced damages and attorneys' fees are warranted. The Court has already decided *not* to award Baden enhanced damages or attorneys' fees. (Dkt. No. 348.) Because the jury's willfulness finding has no effect on this litigation, the issue is moot and the motion for a new trial on the issue of willfulness is denied.

## 3. Damages

The jury awarded $38,031 in patent damages. The jury appears to have calculated that award by multiplying a 15% royalty rate by a royalty base of $80,491, representing sales of the "old" dual cushion technology basketball in the United States from 2002 through 2007, and $173,052, representing sales of the "new" basketballs in the United States from August 2006 through January 2007. (*See* Tr. 1036–37.) Molten argues that the jury's damages award is improper because its calculation included sales of "dual cushion technology" basketballs made prior to the date on which Baden is legally entitled to collect damages and included sales of non-infringing basketballs.

The Court will not disturb the jury's inclusion of the sales of "new" non-infringing balls from August 2006 through January 2007 because those balls were sold during the time Molten was still offering for sale its infringing ball even though it was delivering a non-infringing ball.

■■■ Molten argues that the jury's patent damages award improperly includes sales made prior to the date on which Baden is legally entitled to collect damages. Patent Act damages are proper only after a defendant had actual or constructive notice of the patent. *See* 35 U.S.C. § 287(a) (1994); *Maxwell v. J. Baker, Inc.*, 86 F.3d 1098, 1111 (Fed.Cir. 1996). In its instructions to the jury on patent damages, the Court did not instruct the jury that Baden is not entitled to damages pertaining to sales before it either began marking its products or notified Molten of the infringement. (*See* Dkt. No. 312, Final Jury Inst. Nos. 27–28; Tr. 1005.) But the Court did not instruct the jury on this notice requirement, because *Molten failed to timely raise the issue with the Court.* On August 9, the Court instructed the parties that they were to confer regarding final jury instructions and file their proposed final instructions no later than 8:00 a.m. on Monday, August 13, 2007. (Tr. 707.) On August 13, at 7:43 a.m., Molten filed its proposed amendments to the preliminary instructions. (Dkt. No. 304.) These proposed amendments did *not* include an instruction regarding the need for actual or constructive notice of infringement. (*Id.*) However, at 4:43 p.m. on August 13, Molten filed supplemental proposed instructions that included a proposed instruction that stated that any royalties awarded commence on the date Molten was notified of its infringement. (Dkt. No. 306.) On August 14, the Court and counsel discussed the final set of jury in-

---

7. On August 20, 2007, four days after the jury rendered its verdict and found that Molten had willfully infringed Baden's patent, the Federal Circuit overruled its previous definition of willful infringement and held that "proof of willful infringement permitting enhanced damages requires at least a showing of objective recklessness." *In re Seagate Tech., LLC,* 497 F.3d 1360, 1371 (Fed.Cir. 2007).

structions and the Court decided not to include Defendants' late-proposed notice instruction. (*See* Tr. 1002–05.) Molten took exception to the Court's refusal to give this instruction. (Tr. 1005.)

The Court will not alter the jury's damages award based on an issue that Molten should have raised earlier. The Court instructed Molten to file its proposed final instructions by a certain time to give opposing counsel time to prepare a response and to give the Court time to consider, research, and rule upon the proposed instructions. Molten failed to timely present its proposed final instructions. Because Molten waived this issue by not raising it in a timely fashion with the Court, the Court will not reduce the jury's patent damages award.

**C. Evidence of Invalidity**

Finally, Molten takes issue with two of the Court's evidentiary rulings—the Court's exclusion of the Japanese prior art references and exclusion of Molten's witness Craig Barker, who intended to testify regarding the obviousness of Baden's patent. Molten has offered no legal authority for its conclusory assertion that the Court's exclusion of this evidence and testimony constitutes legal error. For the reasons explained above—particularly, because Molten inexcusably delayed identifying its witnesses and translator until the eve of trial (see Dkt. No. 283 & Tr. 698–702, 985–88)—the Court finds no error in these evidentiary rulings. A new trial on these issues is not warranted.

**Conclusion**

After a seven-day trial, the jury returned its verdict in favor of Plaintiff, awarding Plaintiff over $8 million in Lanham Act and Patent Act damages. Unhappy with the outcome of the trial, and with new counsel at the helm, Defendants now want a "do over." But the outcome of the trial was, in large part, dictated by Molten's untimely identification of witnesses and evidence, late and chaotic presentation of jury instructions, and failure to properly present the legal issues. The Court-imposed deadlines provide a structure for efficient and fair presentation of the issues leading up towards trial; had the Court not ruled the way it did, Molten's failure to abide by these deadlines would have prejudiced Baden's ability to try its claims. The Court will not grant Molten's request for another chance to defend against Baden's claims. The Court DENIES the motions for new trial and judgment as a matter of law.

The clerk is directed to send a copy of this order to all counsel of record.