# United States Court of Appeals for the Federal Circuit

2008-1216, -1246

BADEN SPORTS, INC.,

Plaintiff-Cross Appellant,

v.

MOLTEN USA, INC.
and KABUSHIKI KAISHA MOLTEN (doing business as Molten Corporation),

Defendants-Appellants.


Bruce A. Kaser, Vantage Law PLLC, of Issaquah, Washington, argued for plaintiff-cross appellant. With him on the brief was James L. Phillips, Miller Nash LLP, of Seattle, Washington.

Richard P. Bress, Latham & Watkins LLP, of Washington, DC, argued for defendants-appellants. With him on the brief were Erica Goldberg; and Daiske Yoshida, of Tokyo, Japan. Of counsel were Arthur S. Beeman, DLA Piper US LLP, of San Francisco, California; and M. Elizabeth Day, DLA Piper LLP, of East Palo Alto, California.

Appealed from: United States District Court for the Western District of Washington

Judge Marsha J. Pechman

# United States Court of Appeals for the Federal Circuit

2008-1216, -1246

BADEN SPORTS, INC.,

Plaintiff-Cross Appellant,

v.

MOLTEN USA, INC.
and KABUSHIKI KAISHA MOLTEN (doing business as Molten Corporation),

Defendants-Appellants.

Appeals from the United States District Court for the Western District of Washington in Case No. 06-CV-210, Judge Marsha J. Pechman.

_____

DECIDED: February 13, 2008

_____

Before LOURIE, RADER, and LINN, <u>Circuit Judges</u>.

LOURIE, <u>Circuit Judge</u>.

Kabushiki Kaisha Molten and Molten USA, Inc. (collectively "Molten") appeal from a final judgment of the United States District Court for the Western District of Washington denying Molten's motions for a new trial and judgment as a matter of law ("JMOL") relating to a jury award of $8,054,579 for false advertising under Section 43 of the Lanham Act. <u>See</u> <u>Baden Sports, Inc. v. Kabushiki Kaisha Molten</u>, 541 F. Supp. 2d 1151 (W.D. Wash. 2008). Baden Sports, Inc. ("Baden") cross-appeals from the court's decision denying Baden's motion for a modified injunction against Molten. Because the

court erred in denying Molten's JMOL motion, we reverse.

BACKGROUND

Baden manufactures inflatable sports balls, including high-end, game-quality basketballs. In 1997, Baden obtained U.S. Patent 5,636,835 ("the '835 patent"), which discloses a ball with "raised seams" and a "layer of padding underneath the outer covering." '835 patent col.2 ll.8-9,18 (filed May 12, 1995). Baden sells basketballs embodying the invention of the '835 patent and markets those balls as containing "cushion control technology."

Molten competes with Baden in the high-end basketball business. In 2002 or 2003, Molten began selling basketballs with an inner, padded layer. Molten advertised its new basketballs as containing "dual-cushion technology." According to Molten's advertisements, dual-cushion technology combines two different cushioning layers: one layer, made of foam, that surrounds the core of the ball, and a second layer of soft rubber seams.

On February 13, 2006, Baden filed a complaint alleging that Molten's sales and offers to sell basketballs in the United States constituted infringement of the '835 patent. In March of that year, Baden filed a First Amended Complaint alleging that Molten's advertising of its dual-cushion technology basketballs violated Section 43 of the Lanham Act, 15 U.S.C. § 1125. Sometime in the summer of 2006, after settlement discussions between the two companies failed, Molten ceased importing dual-cushion basketballs into the United States.

On July 16, 2007, the district court ruled on Baden's motion for summary judgment of patent infringement. Baden Sports, Inc. v. Kabushiki Kaisha Molten, No.

2:06-cv-210, 2007 U.S. Dist. LEXIS 51186 (W.D. Wash. July 16, 2007). Finding that Baden had "shown that every element in Claim 3 of the '835 patent is present in Molten's basketball," the district court granted summary judgment of infringement. Id. at *14. The court denied Baden's request for permanent and preliminary injunctions at that time and denied Molten's motion for summary judgment of invalidity. Id. at *27-31.

In a separate opinion entered the same day, the district court granted in part and denied in part Molten's motion for summary judgment on the false advertising claims. Baden Sports, Inc. v. Kabushiki Kaisha Molten, No. 2:06-cv-210, 2007 U.S. Dist. LEXIS 51252 (W.D. Wash. July 16, 2007). In doing so, the court narrowed the scope of Molten's marketing language to be presented to the jury. First, the court granted Molten's motion for summary judgment on Baden's false advertising claims based on advertisements that used the terms "proprietary" and "exclusive." The court found that "proprietary" and "exclusive" were terms that conveyed the idea that "Molten invented and owns the basketball technology." Id. at *16. Those terms, the court held, were precluded from Lanham Act liability by the Supreme Court's decision in Dastar Corp. v. Twentieth Century Fox Film Corp., 539 U.S. 23 (2003). Id. at *16-17. However, the court denied Molten's motion for summary judgment on Baden's false advertising claims based on advertisements that used the word "innovative." The court reasoned that "innovative" does not necessarily connote the inventor of the technology, and can describe "the nature, characteristics, or qualities of the basketballs themselves." Id. at *17. Such claims of basketball characteristics, the court reasoned, were permissible in light of Dastar. Thus, the court allowed Baden to proceed to trial with its false advertising claim, but only insofar as that claim was based on Molten's allegedly false

use of "innovative."

In its opening statement at trial, Baden's counsel told the jury that evidence would be presented that Molten had falsely advertised that "dual cushion technology [was] a Molten innovation."  Tr. of Oral Argument at 104, <u>Baden Sports</u>, 541 F. Supp. 2d 1151 (W.D. Wash. Aug. 6, 2007) (No. 363).  Counsel further articulated that Molten should be required to "give up the financial benefit that they have received from falsely advertising dual cushion technology as their innovation."  <u>Id.</u> at 127.  After opening statements, Molten moved, under Federal Rule of Civil Procedure 50(a), for judgment as a matter of law on Baden's false advertising claims, arguing that <u>Dastar</u> precluded claims based on authorship of an idea.  Tr. of Oral Argument at 192, <u>Baden Sports</u>, 541 F. Supp. 2d 1151 (W.D. Wash. Aug. 6, 2007) (No. 365).  The court denied the motion. <u>Id.</u> at 198.

During trial, the district court excluded some of Molten's proposed evidence.  Of relevance to this appeal, the court refused to permit testimony from a number of witnesses regarding the differences between the companies' basketballs.  The testimony excluded by the district court included proposed cross-examinations of Baden's expert, Richard Yalch, and Baden's CEO, Michael Schindler, as well as proposed direct examination of Molten USA's CEO, Kiyoaki Nishihara.  The court excluded that comparative testimonial evidence based on its prior ruling on infringement.  The court found that because summary judgment of infringement of the '835 patent had already been granted, Molten was precluded from arguing that its basketballs were different from Baden's basketballs.  Tr. of R. at 578-81, <u>Baden Sports</u>, 541 F. Supp. 2d 1151 (No. 367) ("I've already made the determination . . . that Molten's

technology infringes on Baden.").

After both parties rested at trial, the district court invited Molten to renew its Rule 50(a) motion. Molten declined to do so at that time. The jury then returned a verdict awarding Baden $38,031 for patent infringement and $8,054,579 for intentional false advertising under the Lanham Act.

After trial, the district court enjoined Molten from further infringing the '835 patent in the United States and from stating in its U.S. advertising that dual-cushion technology is "innovative." Baden Sports, Inc. v. Kabushiki Kaisha Molten, No. 2:06-cv-210, 2007 U.S. Dist. LEXIS 70776 (W.D. Wash. Sept. 25, 2007). Molten then moved for judgment as a matter of law under Fed. R. Civ. P. 50(b) and for a new trial under Fed. R. Civ. P. Rule 59. The court denied both motions. Baden Sports, 541 F. Supp. 2d at 1160-63. In denying Molten's Rule 50(b) JMOL motion, the court acknowledged that although some of the testimony at trial conflated "innovative" and "proprietary," the court felt that "other testimony ma[de] clear that the witnesses believed the advertising to be false because Molten's product was not 'new.'" Id. at 1159.

Molten timely appealed the district court's judgment, and Baden filed a timely cross-appeal. We have jurisdiction under 28 U.S.C. § 1295(a)(1).

DISCUSSION

We apply our own law with respect to issues of substantive patent law and also with respect to certain procedural issues pertaining to patent law. See Research Corp. Techs. v. Microsoft Corp., 536 F.3d 1247, 1255 (Fed. Cir. 2008) (citations omitted). We apply the law of the regional circuit on non-patent issues. Id. In this case, only Baden's cross-appeal implicates patent law. Other than that issue, we are left only to decide

whether the district court erred regarding the Lanham Act decision. "In reviewing a trial court's denial of a motion for judgment as a matter of law in Lanham Act cases, this court applies the law of the relevant regional circuit. . . ." Syngenta Seeds, Inc. v. Delta Cotton Coop., Inc., 457 F.3d 1269, 1273 (Fed. Cir. 2006) (footnote omitted). In this case, the applicable regional circuit law is that of the Ninth Circuit. Under Ninth Circuit law, the denial of a Rule 50(b) renewed motion for judgment as a matter of law is reviewed de novo. White v. Ford Motor Co., 312 F.3d 998, 1010 (9th Cir. 2002) (footnote omitted). The Ninth Circuit reviews evidentiary rulings under an abuse of discretion standard. Janes v. Wal-Mart Stores Inc., 279 F.3d 883, 886 (9th Cir. 2002). A motion for a new trial is also reviewed for abuse of discretion. Id.

Molten makes three primary arguments on appeal. First, it claims that the district court erred by failing to dismiss Baden's Lanham Act claim in light of the Supreme Court's holding in Dastar. According to Molten, Dastar prohibits Lanham Act claims based on advertisements that falsely claim authorship of an idea. Thus, Molten argues, because Baden's claims only allege false authorship of an idea, they are prohibited by Dastar. Molten argues that, to the extent that the court characterized Baden's claims as concerning aspects other than idea origination, it did so in error. Molten's second argument is that the district court erred in excluding evidence relevant to the element of falsity regarding the "innovation" language in its advertisements. Finally, Molten claims that the $8 million damages award is excessive and against the weight of the evidence and should thus be remitted.

Baden counters that the present case does not revolve around claims of authorship; thus, Dastar is irrelevant. According to Baden, Dastar only prohibits claims

brought under section 43(a)(1)(A) of the Lanham Act that are based on the failure to properly credit an author. Baden argues that its claims were properly brought under section 43(a)(1)(B) of the Lanham Act and therefore are not prohibited by Dastar. Furthermore, Baden alleges that significant "non-Dastar" evidence independently established Molten's Lanham Act liability. Baden also argues that the district court did not err in denying Molten's request for a new trial based on the exclusion of evidence. Finally, Baden urges this court to find, as the district court did, that the jury's damages award was not excessive and should be upheld.

A.     Dastar and Section 43(a) of the Lanham Act

We agree with Molten that Dastar precludes Baden's section 43(a) claim. The Supreme Court stated in Dastar that section 43(a) of the Lanham Act does not have boundless application as a remedy for unfair trade practices. Dastar, 539 U.S. at 29. Because of its inherently limited wording, section 43(a) can never be a federal codification of the overall law of unfair competition, but can only apply to certain unfair trade practices prohibited by its text. Id. Section 43(a) of the Lanham Act does not create liability from Molten's advertisements because those advertisements do not concern the "origin of goods," to which section 43(a)(1)(A) is directed, nor do they concern the "nature, characteristics, [or] qualities" of the goods, which is what Ninth Circuit law has interpreted Section 43(a)(1)(B) to address. See Sybersound Records, Inc. v. UAV Corp., 517 F.3d 1137, 1144 (9th Cir. 2008).

Section 43(a)(1) of the Lanham Act reads as follows:

(1)  Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading

representation of fact, which—

    (A)  is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or

    (B)  in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,

shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a)(1).

Dastar involved a television series about World War II. The owners of the series allowed its copyright to expire, thus placing the series in the public domain. Dastar, 539 U.S. at 26. Dastar Corporation copied and edited the series, added new narrations, repackaged and renamed the series, and began selling the modified video as its own product. Id. at 26-27. A number of media companies brought suit against Dastar Corporation alleging that sales of the video violated section 43(a) of the Lanham Act, the same section implicated by the present appeal. Id. at 25, 27.

Section 43(a)(1)(A) of the Lanham Act makes actionable any commercial misrepresentation that is likely to cause confusion "as to the origin" of goods. 15 U.S.C. § 1125(a)(1)(A); see also Dastar, 539 U.S. at 29-30. The Supreme Court held that "origin of goods," as that term is used in Section 43(a), does not refer to "the person or entity that originated the ideas or communications that 'goods' embody or contain." Dastar, 539 U.S. at 32. Instead, the Court read "origin of goods" as referring "to the producer of the tangible goods that are offered for sale, and not to the author of any

idea, concept, or communication embodied in those goods." Id. at 37. Because Dastar Corporation was the "origin," or producer, of the products it sold, the Court held that Dastar was not liable for false advertising under the Lanham Act. Id. at 38.

Applying the Supreme Court's interpretation of section 43(a)(1)(A) to this case entails an evaluation of whether Molten's advertising refers to the "producer of the tangible goods," in which case a claim under section 43(a)(1)(A) would be proper, or whether it refers to "the author of" the idea or concept behind Molten's basketballs, in which case the claim would be foreclosed by Dastar. Looking at the case in this light, it is apparent that Dastar does not permit Baden to claim false advertising under section 43(a)(1)(A). Baden has not argued that someone other than Molten produces the infringing basketballs, and nothing in the record indicates that Molten is not in fact the producer of the balls. Thus, Baden's claims are not actionable under section 43(a)(1)(A) because they do not "cause confusion . . . as to the origin" of the basketballs.

While Baden agrees that Dastar precludes finding liability in this case under section 43(a)(1)(A), it argues that its Lanham Act claims are permitted under Section 43(a)(1)(B). That subsection creates liability for any commercial advertising that "misrepresents the nature, characteristics, qualities, or geographic origin" of goods. 15 U.S.C. § 1125(a)(1)(B). Baden argues that its claims survive Dastar's holding by pointing to dictum at the end of the Dastar opinion:

> If, moreover, the producer of a video that substantially copied the Crusade series were, in advertising or promotion, to give purchasers the impression that the video was quite different from that series, then one or more of the respondents might have a cause of action—not . . . under the 'confusion . . . as to the origin' provision of § 43(a)(1)(A), but for misrepresentation under the 'misrepresents the nature, characteristics [or]

qualities' provision of § 43(a)(1)(B).

<u>Dastar</u>, 539 U.S. at 38 (alteration in original). This language, according to Baden, permits Baden to bring its false advertising claim because Molten's "innovation" claims misrepresent the "nature, characteristics, or qualities" of its basketballs.

Indeed, in permitting Baden's "innovation" claims to proceed to trial, the district court relied on <u>Dastar</u>. <u>Baden Sports</u>, 2007 U.S. Dist. LEXIS 51252, at *17. The court found that "innovative," in contrast to "proprietary" and "exclusive," related to the nature, characteristics, and quality of the basketballs themselves. <u>Id.</u> The court found that "any advertising indicating that Molten's 'Dual Cushion Technology' is 'innovative' or new relates, not to the inventor of Molten's basketball technology, but to the 'nature, characteristics, [or] qualities' of the basketballs themselves. <u>Dastar</u> does not bar a false advertising claim based on Molten's advertising that its product or technology is innovative." <u>Id.</u>

While the dictum in <u>Dastar</u> might suggest that the Supreme Court left open the possibility of a claim arising from a misrepresentation concerning the qualities of certain goods, it does not necessarily suggest that claims based on false designation of authorship are actionable under Section 43(a)(1)(B). Such a holding could create overlap between the Lanham and Patent Acts. <u>See</u> <u>Sybersound Records</u>, 517 F.3d at 1144 (excluding false authorship claims from the Lanham Act in order to avoid "overlap between the Lanham and Copyright Acts").

Moreover, the Ninth Circuit, whose law we follow in this Lanham Act case, held that the "nature, characteristics, and qualities" language of Section 43(a)(1)(B) did not refer to the licensing status of a copyrighted good. <u>Id.</u> The court held that, to avoid

"overlap between the Lanham and Copyright Acts," Section 43(a)(1)(B) must refer to "the characteristics of the good itself." Id. According to the court in Sybersound, the "nature, characteristics, and qualities" of the disputed karaoke recording referred to such things as the "quality of its audio and visual effects," not to its licensing status. Id. Following Sybersound's reasoning, we conclude that authorship, like licensing status, is not a nature, characteristic, or quality, as those terms are used in Section 43(a)(1)(B) of the Lanham Act.

Having reached this determination, we now must examine whether Baden's false advertising claims otherwise implicate the nature, characteristics, or qualities of the basketballs. Thus, we must determine whether Baden has alleged anything more than false designation of authorship. We conclude that Baden has not. No physical or functional attributes of the basketballs are implied by Molten's advertisements. "Innovative" only indicates, at most, that its manufacturer created something new, or that the product is new, irrespective of who created it. In essence, Baden's arguments in this case amount to an attempt to avoid the holding in Dastar by framing a claim based on false attribution of authorship as a misrepresentation of the nature, characteristics, and qualities of a good.

Baden has repeatedly alleged that Molten falsely claimed that Molten, not Baden, created the innovation known as dual-cushion technology. Throughout the trial, Baden steadfastly argued that Molten's advertisements were false precisely because Molten was not the source of the innovation. See, e.g., Tr. of R. at 1045, Baden Sports, 541 F. Supp. 2d 1151 (No. 369) ("They took our technology and they began to advertise it as their own invention."); id. at 1051 ("[T]he representation that 'dual cushion technology' is

a Molten innovation would have a tendency to deceive a substantial segment of his audience.").

The district court stated that "[a]lthough some of that testimony indicates that witnesses believed Molten's advertising was false because Baden actually created the patented design, not Molten, other testimony makes clear that witnesses believed the advertising to be false because Molten's product was not 'new,'" Baden Sports, 541 F. Supp. 2d at 1159.  On appeal, Baden has waived any such argument about novelty or newness, as Baden has limited its arguments to Molten's claims to be the innovator of dual-cushion technology.  For example, Baden states in its reply brief that "[t]his is not a case that involves any single consistent use of 'innovative' or 'innovation' in Molten's advertising.  Instead, there are multiple variations that collectively convert Molten's advertising from a general statement that it is merely selling an 'innovative' product to communicating [that] 'this particular innovation is Molten's.'"  Baden's Reply Br. at 49; see also id. at 45 ("Baden did contend that it wanted Molten to stop falsely advertising that Molten is the creator of the design."); id. at 50 (arguing that Molten's advertisements are not puffery because they do not merely claim an innovation, but rather "a Molten innovation" (emphasis in original)).  Furthermore, at oral argument before this court, Baden's counsel confirmed that Baden was alleging false advertising based exclusively on Molten's claim to have been the innovator of the technology.

> **The Court**: "So the only thing you're really saying they offended is by saying, 'We, Molten, made these innovations'?"
>
> **Counsel for Baden**: "That's correct.  What we're saying is Baden developed this technology."

Oral Argument at 20:45, http://oralarguments.cafc.uscourts.gov/mp3/2008-1216.mp3.

Baden has not argued on appeal that Molten's innovation claims were false for any reason other than a false attribution of the authorship of that innovation.

Baden's claims therefore do not go to the "nature, characteristics, [or] qualities" of the goods, and are therefore not actionable under section 43 (a)(1)(B). To find otherwise, i.e., to allow Baden to proceed with a false advertising claim that is fundamentally about the origin of an idea, is contrary to the Ninth Circuit's interpretation of Dastar. See Dastar, 539 U.S. at 37; Sybersound, 517 F.3d at 1144. Thus, we reverse the district court's denial of judgment as a matter of law on Baden's Lanham Act claims.[1]

B.    Other False Advertising Claims

Baden argues that, even if Dastar precludes liability based on Molten's "innovative" language, there was sufficient "non-Dastar" evidence at trial to independently support the jury's Lanham Act award. The evidence that Baden points to includes Molten's "switch" to a non-dual cushion design while still advertising their basketballs as containing dual-cushion technology, and Molten's false claims that its basketballs were designed by a prominent Italian designer.

We find that Baden did not pursue those false advertising arguments at trial. Regarding Molten's alleged "switch," Baden failed to raise a consumer confusion

---

[1]    We note that under the law of a different circuit, this case may well have a different result. See Zyla v. Wadsworth, 360 F.3d 243, 252 n.8 (1st Cir. 2004) ("The court in Dastar left open the possibility that some false authorship claims could be vindicated under the auspices of § 43(a)(1)(B)'s prohibition on false advertising."); Clauson v. Eslinger, 455 F. Supp. 2d 256, 261 (S.D.N.Y. 2006) ("The Dastar court explicitly left open the possibility that some false authorship claims could be vindicated under the auspices of this section's prohibition on false advertising."). But see Antidote Int'l Films, Inc. v. Bloomsbury Publ'g, PLC, 467 F. Supp. 2d 394, 400 (S.D.N.Y. 2006). However, as we are bound by the law of the Ninth Circuit, we adopt Sybersound's holding precluding false authorship claims from being brought under section 43(a)(1)(B).

argument in its complaint or the pre-trial order. Thus, Baden did not pursue its "switch" claims at trial and has therefore waived that argument on appeal. See Eagle v. AT&T Co., 769 F.2d 541, 548 (9th Cir 1985) ("[A] theory will be barred if not at least implicitly included in the [pretrial] order."). Furthermore, Baden did not object to the district court's jury instruction, which referred only to the "innovation" claims. See Final Jury Instructions at 16, Baden Sports, Inc. v. Kabushiki Kaisha Molten, No. 2:06-cv-210, 2007 U.S. Dist. LEXIS 70776 (W.D. Wash. Sep. 25, 2007) (No. 312) (instructing the jury that Molten claimed "'dual cushion' basketballs as a Molten innovation and they were not"). That failure undermines Baden's argument that it pursued the "switch" claim at trial. Lastly, Baden argues that the "switch" became a "significant" issue at trial. However, much of the testimony that Baden points to supporting that argument makes clear that the purpose of the testimony was to demonstrate that Molten had falsely claimed to be the innovator. See, e.g., Tr. of R. at 254, Baden Sports, Inc. v. Kabushiki Kaisha Molten, 541 F. Supp. 2d 1151 (No. 365) (witness stating that the significance of the "switch" was that it demonstrated that "it's not their innovation").

Baden similarly failed to pursue its claims based on misrepresentation of the basketball designer. In fact, the district court found that the design issue was "not an issue at trial." Order Regarding Baden's Req. for Entry of Final J. and Permanent Inj. and Defs.' Req. for Remedies-Specific Evidentiary Hr'g at 4, Baden Sports, Inc. v. Kabushiki Kaisha Molten, No. 2:06-cv-210, 2007 U.S. Dist. LEXIS 70776 (W.D. Wash. Sept. 25, 2007) (No. 348). Thus, it is evident that Baden pursued only its claim of false designation of authorship at trial. Because that claim is barred by Dastar, we reverse the district court's denial of judgment as a matter of law.

C.    Other Issues

Because we reverse the Lanham Act claims in light of <u>Dastar</u>, we need not address Molten's further arguments requesting a new trial based on the exclusion of evidence.  Similarly, we need not address Molten's arguments regarding damages.

However, we must address Baden's cross-appeal, which is based on patent law. <u>See</u> Baden's Mot. for Entry of J. and Permanent Inj. at 2, <u>Baden Sports, Inc. v. Kabushiki Kaisha Molten</u>, No. 2:06-cv-210, 2007 WL 5043097 (W.D. Wash. Aug. 20, 2007) (No. 323).  Baden requested that the district court enjoin Molten from using the model numbers GL7, GG7, GL6, GG6, B7GX, and B6GX in the United States.  Those model numbers are used by Molten on its dual-cushion basketballs sold outside of the United States, and are also used on basketballs sold in the United States which do not contain dual-cushion technology.  Baden argues that, absent the requested relief, there is a substantial likelihood of consumer confusion; <u>i.e.</u>, consumers attempting to purchase basketballs with Baden's patented technology in the United States will instead buy Molten's basketballs.  However, Baden's request that the district court enjoin the use of Molten's numbering system was brought under the Patent Act, and Baden is now arguing that the district court erred by not applying the Lanham Act standard to its injunction ruling.  Baden's Br. at 69-70.  Baden cannot argue a new statutory basis for its injunction on appeal.

Furthermore, the district court's <u>sua</u> <u>sponte</u> amendment of the original permanent injunction moots the issue.  The amended injunction requires Molten to "inform consumers that Molten basketballs employing 'dual-cushion' technology are not available in the United States."  Order Den. Mot. for Contempt but Amending Permanent

Inj. at 5, <u>Baden Sports, Inc. v. Kabushiki Kaisha Molten</u>, No. 2:06-cv-210, 2008 WL 356558 (W.D. Wash. Jan. 29, 2008) (No. 388).  That amendment would appear to remove any potential consumer confusion.  We therefore hold that the district court did not abuse its discretion in rejecting Baden's motion to enjoin Molten's use of basketball model numbers.

## CONCLUSION

Because Baden's Lanham Act claims were not actionable under Ninth Circuit law, we reverse the district court's denial of judgment as a matter of law and vacate the damages award based on those claims.

## <u>REVERSED</u>